Willie B. KILGORE, Plaintiff,

v.

Katherine Jones McCLELLAND, Faye Owens and Charles Herman Stallard, Defendants.

and

Doris McCONNELL, Plaintiff,

v.

Roger ADAMS, Evelyn Bacon, and Judy Carroll, Defendants.

Patsy BURCHETT, Plaintiff,

v.

Phillip Lee CHEEK and County of Lee, Defendants.

Katherine McCLELLAND and Faye Owens, Plaintiffs,

v.

REPUBLIC INSURANCE COMPANY and Compass Insurance Company, Defendants.

Civ. A. Nos. 83–0090–B, 85–0065–B.

United States District Court, W.D. Virginia, Big Stone Gap Division.

April 28, 1986.

---

See also 637 F.Supp. 1241, and 637 F.Supp. 1249.

Gregory E. Lucyk, Asst. Atty. Gen., Richmond, Va., for Fitz-Hugh.

Henry Keuling-Stout, Mullins, Winston, Keuling-Stout, Thomason & Harris, Norton, Va., for Phillip Lee Cheek.

Gary S. Bradshaw, Gate City, Va., Joseph E. Wolfe, Wolfe & Farmer, Norton, Va., Wm. H. Hurd, Bryant, Hurd & Porter, Chesterfield, Va., Cynthia D. Kinser, Pennington Gap, Va., for plaintiffs.

Henry S. Stout, Jr., Florence Powell, Mullins, Winston, Stout & Thomason, Norton, Va., for Adams, Bacon and Lee County.

C. Dean Foster, Jr., Co. Atty., Gate City, Va., for Scott County.

James P. Jones, Bristol, Va., Judy Carroll Williams, Pennington Gap, Va., for Duncan, Cheek, McClelland and Owens.

## MEMORANDUM OPINION

KISER, District Judge.

On January 9, 1986, a hearing was held in the above-captioned matters pursuant to the memorandum opinions of this Court filed on December 7 and December 18, 1985, in the cases docketed as Civil Numbers 83–0090–B and 85–0065–B. As noted in the December 7 memorandum opinion, Defendants were sued not only in their individual capacities but also in their official capacities, and thus an issue remains of whether they were acting in their official capacities so as to impose liability for the damages awarded on the body whose policy or custom Defendants were effecting or carrying out.

Under the aegis of *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), local governments were no longer insulated from liability in actions brought under 42 U.S.C. § 1983. The *Monell* case overruled the earlier holding of the United States Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) that a local government was not "a person" for § 1983 purposes. Thus, under the holding in *Monell*, official capacity suits could be maintained against the entity for whom an individual defendant was an agent if a government custom or policy was being carried out by that agent. Furthermore, the *Monell* case makes it clear that the custom or policy in question need not have been officially adopted or formally approved by the governmental entity. The Court concluded that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037.

Two years later in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), a divided Court decided that governmental entities are not entitled to qualified immunity through asserting the good faith of their officials when such entities are sued under § 1983 for constitutional violations. In reaching this conclusion, the Court answered the question left unresolved in *Monell* of "whether local governments, although not entitled to an absolute immunity, should be afforded some form of official immunity in § 1983 suits." 445 U.S. at 624, 100 S.Ct. at 1402. In rejecting an immunity defense, the *Owen* majority opinion concluded that its decision fairly allocated the costs of official misconduct by reaffirming the availability of the good faith immunity defense to officials whose conduct led to the constitutional deprivation while assuring a remedy for the "innocent individual who is harmed by an abuse of governmental authority." *Id.* at 657, 100 S.Ct. at 1418. The victim's remedy would be borne by the populace as a whole as represented by the entity whose policy or custom was behind the injury. *Id.*

The *Monell* case was relied upon by the United States Court of Appeals for the Fourth Circuit in *Avery v. County of Burke*, 660 F.2d 111 (4th Cir.1981) when it vacated a summary judgment granted below for the county and two boards that were in reality extensions of the county. The appellate court held that although single or isolated incidents generally do not establish the kind of inaction upon which a 42 U.S.C. § 1983 claim may be based, nonetheless the conduct of the boards in failing to promulgate policies and regulations which would have provided proper training and information to employees of board-run agencies and allowed plaintiff to make an informed choice regarding voluntary sterilization could rise to deliberate indifference or tacit authorization of the unwarranted medical procedure. In other words, inaction could rise to the level of depriving one of a constitutional right. Certainly it can be argued in the present case that the entity responsible for promulgating guidelines for electoral boards and general registrars may be liable by reason of its inaction on the political firing question and the resulting constitutional deprivations incurred by Kilgore, McConnell, and Burchett.

Quite recently, *Monell* was discussed and its holding refined by the Supreme Court in *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Pembaur,* a divided Court addressed the issue of whether, and under what conditions, a decision by municipal policymakers on a single occasion could satisfy the *Monell* requirement that municipal liability under § 1983 must be confined to situations in which a municipal policy lay behind the deprivation complained of. Citing *Owen, Monell,* and *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the *Pembaur* Court concluded:

> If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

—— U.S. at ——, 106 S.Ct. at 1292.

The Court's opinion emphasized that the relevant inquiry is whether final authority to make such policy was delegated by the municipality to the official whose actions are at issue rather than whether the action occurred numerous times. The Court summarized its position as follows: "We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* In the circumstances presently at issue, it is beyond doubt that the electoral boards and general registrar were delegated policymaking authority for the governmental entities they represented. Particularly under the *Pembaur* holding it is clear that a

policy may be set by a single action of a policymaker.

In the present matters it is, therefore, beyond dispute that the governmental entities whose customs or policies were being set or carried out by the electoral boards in Scott County and Lee County, Virginia, would be liable for the constitutional violations occasioned by the officials putting such customs or policies into effect. The same rationale applies equally to the *Burchett* case and the governmental entity whose policy or custom was responsible for Patsy Burchett's loss of her position as assistant registrar in Lee County.

Adding another twist to the present matter is the holding in *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) that in a § 1983 action judgment against a public servant in his official capacity imposes liability for damages on the governmental entity he represents if the entity received notice and an opportunity to respond to the charges. In *Brandon,* the plaintiffs were permitted to amend the pleadings after trial to include a municipality as defendant. The Court noted, referring to its decisions in *Monell, Owen,* and *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978),

> In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond. [footnote omitted]. We now make that point explicit.

In the *Kilgore, McConnell* and *Burchett* cases tried before this court, Defendant electoral board members who failed to appoint McConnell and Kilgore to continue as general registrars in their respective counties and Phillip Cheek, the general registrar who fired and later refused to hire Burchett as his assistant in Lee County, were sued in their individual and in their official capacities. In all three cases, this court has determined that no good faith immunity defense was made out so as to

insulate these defendants from individual liability for money damages.

Insofar as the electoral boards are concerned, it cannot be seriously argued that they were doing anything other than carrying out the official policy of the entity for whom they were acting, whether it be the county or the state. The board members, in selecting the general registrar for their county, were obviously acting in their official capacity. Likewise, Cheek's actions with regard to Burchett were taken within his official capacity.

All of the individual Defendants were performing functions designated under state law. In meeting and appointing a general registrar, an electoral board and its members are carrying out the specific mandate of *Va. Code* § 24.1–43. In appointing an assistant registrar, Phillip Cheek was acting pursuant to the provisions of *Va. Code* § 24.1–45, which empower general registrars to appoint assistant registrars. Defendant board members and Cheek were unquestionably acting within the statutory authority delegated to them under the laws of Virginia. Thus, their actions were official actions of the governmental entity or entities whose custom or policy they were carrying out or, more properly, were setting. Defendants, therefore, are also liable in their official capacities. The issue remains, however, of whether Defendants were carrying out and/or setting state or county custom or policy or a combination of policies of both entities. As a footnote in the *Monell* opinion pointed out, "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent...." 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. *See also Kentucky v. Graham*, 437 U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

As noted previously, the *Brandon* holding that bringing an official capacity suit against an agent of a governmental entity is tantamount to bringing suit against the entity itself contains the proviso that the entity must have received notice and had an opportunity to respond. No problem exists with the notice or response opportu-

nity requirement insofar as the counties of Lee and Scott or the Commonwealth of Virginia are concerned. The original complaints filed on March 30, 1983, in the *McConnell* and *Kilgore* cases, which were later consolidated as Civil Action Number 83–0090, named the counties as Defendants and service was made on the attorneys for these counties. The complaints also named Susan Fitz-Hugh, Secretary of the State Board of Elections, as a Defendant. Fitz-Hugh was represented by the Office of the Attorney General of Virginia. Moreover, one day after the *Kilgore* and *McConnell* complaints were filed in federal court, Fitz-Hugh, later joined by the two other members of the State Board of Elections, filed a declaratory judgment action in the circuit courts of Lee and Scott counties to determine whether the incoming or outgoing electoral boards were empowered to appoint general registrars.

■ Both counties and the Commonwealth filed motions to dismiss in the *Killgore/McConnell* federal action. On June 20, 1983, Plaintiffs' motion to nonsuit the action as to Fitz-Hugh and the counties plus general registrars Phillip Cheek and Glenda Duncan was granted, and these Defendants were dismissed without prejudice. On July 6, 1983, the court granted the motion of the Commonwealth, representing the three members of the State Board of Elections, for leave to appear, file a brief, and make oral argument as *amicus curiae*. A similar *amicus curiae* motion filed on behalf of Scott County was granted on August 5, 1983. Counsel for Lee County fully participated in trial of the *McConnell* matter. By court order dated September 8, 1983, Henry Keuling-Stout became counsel of record to represent the two electoral board members who had failed to reappoint McConnell as general registrar. The same attorney represented Lee County and Phillip Cheek in the *Burchett* case. The Commonwealth, moreover, was also well aware of the *Burchett* action because Susan Fitz-Hugh was a named defendant and was dismissed from the case without prejudice on June 11, 1985. Following separate tri-

als of the *Kilgore* and *McConnell* matters on July 9–11, 1985, and verdicts for Plaintiffs, post-trial motions were filed. Counsel for the counties and the Commonwealth participated fully in the hearing held on those motions on September 11, 1985, and were permitted to file briefs in support of their respective positions. Under the circumstances, I have decided that the *Brandon* criteria regarding notice and opportunity to respond have been completely satisfied.

■ With regard to the issue of whether the electoral board members and general registrar were county or state employees, persuasive arguments supporting each conclusion exist. The real inquiry, however, should be whose policy were the individual Defendants setting or carrying out. When focus is made on this question, the conclusion must be that the state's involvement far outweighed that of the county.

Virtually every action of the electoral board is governed by state law. Because the county does participate in certain aspects of the board's functioning, an argument that the board members have dual state/county roles can be made. Nevertheless, it is clear that county involvement not only is extremely limited but is itself governed by state law. The role of the county vis a vis electoral boards is delineated almost exclusively in the provisions of *Va. Code* § 24.1–31, which address payment of compensation (salary) and expenses of board members. The general appropriations act of the Commonwealth governs annual compensation of board members and the Commonwealth reimburses each county for its payment of salaries, for costs up to $300 incurred for conducting the electoral process, and for mileage for board members. Other than not being reimbursed for excess costs as mentioned above, counties are required to furnish to the board only postage, stationery, and "a bound book for the minutes of its proceedings."

The county's sole input into the appointment of board members, as delineated in *Va. Code* § 24.1–29, is indirect at best. Vacancies on the board are filled by appointment made by a majority of the circuit judges, who, although their jurisdiction encompasses a particular geographical area, are nonetheless state officers. Because the majority makeup of the three member electoral board must reflect the party with the highest number of votes at the last preceding gubernatorial election, the local political party from whose membership any vacancy will be filled may suggest at least three names as potential appointees. The political party in control statewide of the governorship, therefore, will control the electoral board, even though that party is the minority party in the county where the board sits.

State law, specifically *Va. Code* § 24.1–30, establishes meeting, quorum, and recordkeeping requirements, none of which are subject to county control. Moreover, the county has no control over the removal of a general registrar from office or in filling the position when a vacancy occurs. Pursuant to *Va. Code* § 24.1–34, these powers are solely those of the electoral board. In summary, although electoral boards are appointed to function within a particular location, guidelines and regulations for their existence and operation are almost wholly mandated by the statutory law of the Commonwealth. When the question of whose policy the boards were setting when they appointed a general registrar in both Lee and Scott counties is considered, it appears clear that they were executing state policy. The state saw fit to delegate this appointment power to electoral boards rather than vest it in the State Board of Elections. In delegating this authority, the state in effect authorized local electoral boards to set state policy. In exercising the appointment power so delegated, the boards engaged in action directly traceable to the state.[1]

---

1. In reaching the conclusions discussed *supra,* I am mindful of *Va. Code* § 24.1–32 which provides that various election officials, including electoral board members and general registrars, "shall be deemed, for purposes of Title 65.1 [workers' compensation], to be employees of the

■ The same line of reasoning applicable to the electoral boards applies as well to the general registrar's appointment of an assistant registrar. Pursuant to *Va. Code* § 24.1–45, the electoral board determines the number of assistants a general registrar may have and also sets the term of office, which may not extend beyond that of the incumbent general registrar. The statute requires at least one assistant working one day a week when the population exceeds 15,500. The general registrar sets the duties of the assistants and may remove those who fail to perform these duties. Under the same statute the compensation of the assistant must meet federal minimum wage standards, but is fixed and paid by the locality. In contrast, *Va. Code* § 24.1–43 provides that the general registrar be compensated, as is the electoral board, in accordance with the Appropriations Act of the state. This compensation, as is that of the electoral board, is paid by the local entity but is reimbursed from the state treasury.[2] The county has no actual control over the actions of the general registrar. Instead, its obligations to and dealings with the registrar are financial, i.e. providing office space, supplies and equipment, postage, stationery, and telephone service. The county is also obligated to pay certain other expenses, such as mileage, but only after these expenses are approved by the State Board of Elections.

Traditional principles of master-servant law likewise reinforce my conclusions that the electoral boards and general registrar were acting for and carrying out or setting state policy. When the four elements of traditional master-servant analysis are examined, the inescapable conclusion is that electoral boards and general registrars are dominated by the state. First, the state has promulgated the statutes controlling selection and engagement of these officials. Circuit judges select electoral boards and the boards in turn appoint general registrars. The counties have no control over the appointment or removal process. Second, the compensation of board members and registrars is essentially set by the state and although paid locally, is reimbursed from the state treasury. The county has little role other than advancing funds subject to reimbursement and providing a work place and the "tools" to perform the tasks. Third, the power of dismissal and filling vacancies is vested solely in the state, and the county has no input whatsoever. Last, control of the actions of the board and of the registrars is under state control. Only the state could have promulgated directives to electoral boards regarding the propriety of appointing general registrars solely on the basis of political party affiliation. Likewise, the state, as the sole publisher of guidelines or handbooks for general registrars, could have admonished these officials not to use political party affiliation in determining whom to appoint as their assistant(s). In the *Burchett* case, Defendant Cheek testified to his contacts with the Secretary of the State Board of Elections, who informed him that he was free to appoint whomever he wished as his assistant. Without deciding whether there could be *any* circumstances under which electoral boards and/or general registrars could be employees of the locality where they serve or could be deemed as carrying out or setting local custom or policy, under the circumstances of the present matters, I must conclude that the actions complained of were taken while executing state custom or policy.

■ Although the state's policy was being executed by the individual Defendants

respective cities or counties in which they serve." The rationale behind this workers' compensation provision, however, is easily distinguishable from the rationale leading to my conclusions. Injuries arising out of or in the course of employment are more logically connected with a local entity. Exercising an authority delegated by the state, as in the present case, is more logically connected with the state and the state should be responsible for the compensation awarded.

2. The statute provides that if a county pays its registrar more than the amount set by state law, the state treasury shall not reimburse the county for such supplements. Supplements, however, were not provided by Lee and Scott counties.

in the present case, this does not render the state liable to the Plaintiffs for money damages because the Eleventh Amendment provides immunity for the state against such recoveries. The state is subject to prospective injunctive relief, *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), but the Eleventh Amendment stands as a complete bar against recovery of money damages from the state unless the state waives its immunity, either expressly or impliedly, or an act of Congress abrogates that immunity pursuant to powers granted to Congress in § 5 of the Fourteenth Amendment.[3] There is no contention by any of the parties in the case that the Commonwealth of Virginia has waived its immunity nor can there be a serious contention that Congress by enacting 42 U.S.C. § 1983 intended to abrogate the state's Eleventh Amendment immunity. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1978) and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Counsel for the Plaintiffs and counsel for Defendants McClelland and Owens urge that the Eleventh Amendment does not apply to bar monetary recovery from the state when it is ancillary to injunctive relief. This argument was specifically addressed and rejected in the *Edelman* holding, which states that a retroactive award, by whatever name it is called, that requires the payment of funds from the state treasury is barred by the Eleventh Amendment. Consequently, this argument must be rejected.

Thus, even though the named Defendants were executing state policy, the Commonwealth of Virginia is not liable to the Plaintiffs for the money damages awarded by the jury. This does not mean, however, that the state has abandoned its employees to suffer the monetary hardships which may be imposed upon them by reason of performing their functions as state employees. Virginia had the foresight to procure insurance for its employees to provide for such eventualities.

The final issue requiring resolution in this matter focuses on the declaratory judgment action filed by Katherine McClelland and Faye Owens against Republic Insurance Company and Compass Insurance Company to resolve the question pertaining to insurance coverage.[4] Republic, the insurer of Scott County, and Compass, the state insurer, both denied coverage. Republic's position initially was grounded in its belief that electoral board members were state employees although it conceded that it had issued a liability insurance policy that would cover certain officials and employees of Scott County. Compass' stance, as evidenced in a letter dated July 25, 1983, to counsel for the board members was as follows:

> In view of a recent opinion of the Attorney General of Virginia, The Compass Insurance Company has taken the position that members and employees of local Boards of Election are not State employees and are, therefore, not covered by the Policy. In the event, however, of a final judicial determination that such persons legally are State employees, then the position of The Compass Insurance Company would be that they are covered by the Compass Policy.

■ The Court has reviewed the entire file on the declaratory judgment action and has examined both policies, as well as the deposition of Billie Lynch, the county administrator of Scott County. Ms. Lynch's testimony reinforces the conclusions reached in the foregoing discussion that electoral board members and the general registrar are arms of the state. Insofar as the policies themselves are concerned, the one issued by Republic to Scott County

---

**3.** This Court has recently rendered the decision in *Anderson v. Radford University,* 633 F.Supp. 1154 (W.D.Va.1986), which fully discusses the "waiver" and "abrogation" methods of overcoming the Eleventh Amendment bar.

**4.** This action is one that involves only the Scott County Defendants who would be liable for damages in the *Kilgore* matter because Lee County provided representation for the electoral board members and general registrar in the *McConnell* and *Burchett* matters.

clearly excludes state employees from coverage. "Insured" under the definitions section of that policy is restricted to the public entity and

> those persons who were, now or shall be duly elected or appointed officials or members or employees of the Public Entity or of commissions, boards or other units operating by or under the jurisdiction of the Public Entity and within an apportionment of the total operating budget of the Public Entity indicated in the proposal form.

The electoral board and the general registrar are appointed officials but are not, as this Court's foregoing discussion has indicated, operated by or under the control of the county. Though the electoral board and registrar's office are included as separate line items in the county budget, Ms. Lynch in her deposition confirmed that the state mandates compliance with a uniform accounting system which was established by and is regulated by the state. Thus, counties have no choice but to conform in order to, among other things, receive the reimbursements provided for by state law. Under the circumstances, it is obvious that the public official liability insurance policy issued to Scott County by Republic does not and was never intended to cover electoral board members or the general registrar.

■ In contrast, coverage as stated in Sections I and II of the Compass policy by definition extends to each "Insured", i.e. "each person who is duly constituted by or for the Commonwealth of Virginia as a State employee." "State employee" is defined as "any officer, employee, agent or any person acting in an official capacity, temporarily or permanently in the service of the Legislative, Executive or Judicial Branches of the Commonwealth, whether with or without compensation and whether full or part-time." Once one qualifies as an "Insured", the policy in relevant part covers all claims "arising out of the Insured's activities in his professional capacity" and includes the payment of obligations incurred pursuant to 42 U.S.C. §§ 1983 and 1988. The policy specifically excludes sev-

eral offices from coverage, including most "[o]fficers and employees of political subdivisions of the Commonwealth." Thus, were the electoral boards and general registrars county employees, there would be no coverage by Compass. Pursuant to my conclusions regarding their employment status, however, the damages awarded by the juries in the *Kilgore, McConnell,* and *Burchett* matters are payable under the Compass policy.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

### ORDER

In accordance with the jury verdicts rendered in the cases docketed at 83–0090–B and 85–0065–B, this Court's memorandum opinions and orders entered in those matters on December 7, 637 F.Supp. 1241, and December 18, 1985, 637 F.Supp. 1249, and the Memorandum Opinion accompanying this Order, it is hereby ADJUDGED and ORDERED that:

1. In the *Kilgore/McConnell* case, Civil Action No. 83–0090–B, judgment in the amount of $76,348.50 plus interest at the rate of 7.70% per annum from July 9, 1985, the date of the verdict, until paid is entered in favor of Kilgore against McClelland and Owens, jointly and severally. Judgment in the amount of $79,399.89 plus interest at the rate of 7.60% per annum from July 11, 1985, the date of the verdict, until paid is entered in favor of McConnell against Adams and Bacon, jointly and severally. The judgment is rendered against these Defendants in their individual and official capacities. Because the Commonwealth of Virginia, however, has immunity the judgment shall not be collectible from it, but Compass Insurance Company, Defendants' insurers, shall be liable for payment of the judgment.

2. In the *Burchett* case, Civil Action No. 85–0065–B, judgment in the amount of $40,000.00 plus interest at the rate of 7.91% per annum from September 12, 1985, the date of the verdict, until paid is entered in

favor of Burchett against Cheek. The judgment is rendered against this Defendant in his individual and official capacity. Because the Commonwealth of Virginia, however, has immunity, the judgment shall not be collectible from it, but Compass Insurance Company, Defendant's insurer, shall be liable for payment of the judgment.

3. Judgment is entered in the *Burchett* matter (Civil Action No. 85–0065–B) for the County of Lee against Plaintiff.

4. In the declaratory judgment action (Civil Action No. 83–0223–B), judgment is entered for Plaintiffs against Compass Insurance Company and for Republic Insurance Company against Plaintiffs.

5. The injunctive relief ordered in the *Kilgore/McConnell* matter, Civil Action No. 83–0090–B, on December 7, 1985, and in the *Burchett* matter, Civil Action No. 85–0065–B, on December 18, 1985, is hereby confirmed. The judgments entered in paragraphs 1 and 2 of this Order shall be reduced in accordance with the December orders for any of these Plaintiffs who resume office prior to April 1, 1987.

6. Although the issue of attorneys' fees has not yet been resolved but is deferred until a later time, the judgments entered hereby are nevertheless final and the Clerk shall strike the above-captioned cases from the active docket of this Court.