829 F.2d 1319
 2 Indiv.Empl.Rts.Cas. 1164
 Doris McCONNELL, Plaintiff-Appellee,
and
Willie B. Kilgore, Plaintiff,
v.
Roger ADAMS; Evelyn Bacon, Defendant-Appellant,
Scott County, VA., Amicus Curiae,
and
Susan H. Fitz-Hugh; Katherine Jones McClelland; Faye
Owens; Charles Herman Stallard; Glenda Clark
Duncan; Judy Carroll; Phillip Lee
Cheek; Lee County, Virginia,
Defendant.
Doris McCONNELL, Plaintiff-Appellee
and
Willie B. Kilgore, Plaintiff,
v.
Roger ADAMS; Evelyn Bacon, Defendant-Appellant,
Scott County, VA., Amicus Curiae,
and
Susan H. Fitz-Hugh; Katherine Jones McClelland; Faye
Owens; Charles Herman Stallard; Glenda Clark Duncan; Judy
Carroll; Phillip Lee Cheek; Lee County, Virginia;
Commonwealth of Virginia, ex rel. State Board of Elections,
Defendant.
Willie B. KILGORE; Doris McConnell, Plaintiff-Appellee,
v.
Katherine Jones McCLELLAND; Faye Owens, Defendant-Appellant,
Scott County, VA., Amicus Curiae,
and
Roger Adams; Evelyn Bacon; Susan H. Fitz-Hugh; Charles
Herman Stallard; Glenda Clark Duncan; Judy Carroll;
Phillip Lee Cheek; Lee County, Virginia; Commonwealth of
Virginia, ex rel. State Board of Elections, Defendant.
Katherine Jones McCLELLAND; Faye Owens, Plaintiff-Appellee,
v.
COMPASS INSURANCE COMPANY, Defendant-Appellant
and
Republic Insurance Company; Commonwealth of Virginia, ex
rel. State Board of Elections, Defendant.
Willie B. KILGORE; Doris McConnell; Patsy Burchett;
Katherine Jones McClelland; Faye Owens, Plaintiff-Appellee,
v.
COMMONWEALTH OF VIRGINIA, ex rel. STATE BOARD OF ELECTIONS,
Defendant- Appellant.
Katherine Jones McCLELLAND; Faye Owens, Plaintiff-Appellant,
v.
REPUBLIC INSURANCE COMPANY; Compass Insurance Company
Commonwealth of Virginia, State Board of
Elections, Defendant-Appellee.
Doris McCONNELL, Plaintiff-Appellee,
and
Willie B. Kilgore, Plaintiff,
v.
COMPASS INSURANCE COMPANY, Party in Interest-Appellant,
Scott County, VA., Amicus Curiae,
and
Roger Adams; Evelyn Bacon; Susan H. Fitz-Hugh; Katherine
Jones McClelland; Faye Owens; Charles Herman Stallard;
Glenda Clark Duncan; Judy Carroll; Phillip Lee Cheek; Lee
County, Virginia; Commonwealth of Virginia, ex rel. State
Board of Elections, Defendant.
Willie B. KILGORE, Plaintiff-Appellee,
and
Doris McConnell, Plaintiff,
v.
COMPASS INSURANCE COMPANY, Party in Interest-Appellant,
Scott County, VA., Amicus Curiae,
and
Roger Adams; Evelyn Bacon; Susan H. Fitz-Hugh; Katherine
Jones McClelland; Faye Owens; Charles Herman Stallard;
Glenda Clark Duncan; Judy Carroll; Phillip Lee Cheek; Lee
County, Virginia; Commonwealth of Virginia, ex rel. State
Board of Elections, Defendant.
Willie B. KILGORE; Doris McConnell; Patsy Burchett,
Plaintiff-Appellant,
v.
Roger ADAMS; Evelyn Bacon; Katherine Jones McClelland;
Faye Owens; Charles Herman Stallard; Phillip Lee Cheek;
Lee County, Virginia; Commonwealth of Virginia, ex rel.
State Board of Elections; Republic Insurance Company;
Compass Insurance Company, Defendant-Appellee,
Scott County, VA., Amicus Curiae,
and
Susan H. Fitz-Hugh; Glenda Clark Duncan; Judy Carroll, Defendant.
Patsy BURCHETT, Plaintiff-Appellee,
v.
Phillip Lee CHEEK, Defendant-Appellant,
and
Susan H. Fitz-Hugh; Lee County, Virginia, Defendant (Two Cases).
Patsy BURCHETT, Plaintiff-Appellee,
v.
COMPASS INSURANCE COMPANY, Party in Interest-Appellant,
and
Susan H. Fitz-Hugh; Phillip Lee Cheek; Lee County,
Virginia, Defendant.
 Nos. 86-1507, 86-1604 to 86-1611, 86-1619, 86-1620 and 86-3011.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 2, 1987.
Decided Oct. 1, 1987.
Rehearing and Rehearing In Banc Denied Nov. 19, 1987.
 
 Gregory E. Lucyk, Asst. Atty. Gen., Deborah Wood Brattain (Gary C. Hancock, Thomas J. McCarthy, Gilmer, Sadler, Ingram, Sutherland and Hutton on brief), Larry B. Kirksey (Woodward, Miles & Flanagan, P.C. on brief), James Jones (Penn, Stuart, Eskridge & Jones, Mary Sue Terry, Atty. Gen. of Va., Gail Starling Marshall, Deputy Atty. Gen., Henry Keuling-Stout, Florence Powell, Mullins, Keuling-Stout, Thomason & Harris, C. Dean Foster, Jr., Co. Atty., on brief), for defendants-appellants; William Henry Hurd (Bryant, Hurd & Porter, on brief).
 Cynthia D. Kinser (Joseph E. Wolfe, Jerry W. Kilgore, Terry G. Kilgore, Wolfe & Farmer, on brief), for plaintiffs-appellees.
 Before RUSSELL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 This consolidated appeal concerns judgments for damages and injunctive relief entered against county electoral board members and a general county registrar. These appellants failed to reappoint two registrars and an assistant registrar, appellees, due to their political affiliations. This appeal also concerns the district court's order that the Commonwealth of Virginia's insurance carrier pay the judgments. We affirm the district court's judgment that the failure to reappoint the appellees violated their constitutional rights and its order requiring the appellants to reappoint the appellees to their respective positions. Because the appellants are not subject to damages in either their individual or official capacities, we reverse the judgments for damages.[1]
 
 
 2
 * Until April 1, 1983, Willie Kilgore and Doris McConnell served as general registrars for Scott and Lee Counties in Virginia, respectively. Both were Republicans. In the 1982 general elections, Virginia voters replaced the incumbent Republican governor with a Democrat. Because of this change, Va. Code Ann. Sec. 24.1-29 (1985) required a Democratic majority on the three-member electoral board in each city and county. The terms of the Democratic-controlled boards commenced on March 1, 1983.
 
 
 3
 When the terms of Kilgore and McConnell expired on March 31, 1983, their respective electoral boards did not reappoint them as general registrars. Instead, the Scott County board appointed Glenda Duncan, and the Lee County board appointed Phillip Cheek. Both were Democrats. Kilgore and McConnell then filed suit under 42 U.S.C. Sec. 1983 against the Democratic members of their respective electoral boards, alleging that they were not reappointed solely because they were Republicans. They sought reappointment and damages against the board members in both their individual and official capacities. Their claims were severed and tried to different juries, which returned verdicts against the board members in excess of $75,000 in each case. The district court sustained the verdicts and ordered the board members to reinstate Kilgore and McConnell. Finding that the board members were state employees, the district court ordered the state's insurance carrier to pay the judgments.
 
 
 4
 Patsy Burchett served as assistant general registrar to Doris McConnell in Lee County prior to April 1, 1983. When Cheek became general registrar in March 1983, he declined to reappoint Burchett as his assistant. Burchett filed a Sec. 1983 action against Cheek, alleging that she was not reappointed solely because she was a Republican. She sought reappointment and damages against Cheek in both his individual and official capacities. The jury returned a verdict in favor of Burchett and awarded her $40,000 in damages. The district court sustained the verdict and ordered reinstatement of Burchett. Finding that Cheek was a state employee, the district court ordered the state's insurance carrier to pay the judgment.[2]
 
 II
 
 5
 In Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court forbade the discharge or threatened discharge of a "nonpolicymaking, nonconfidential government employee" upon the sole ground of the employee's political affiliation. In Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980), the Court refined the standard applicable to politically motivated discharges:
 
 
 6
 It is equally clear that party affiliation is not necessarily relevant to every policymaking or confidential position.... In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.
 
 
 7
 Branti establishes that a public official may not be discharged solely for reasons of patronage unless the employer can demonstrate that party affiliation is necessary for effective job performance.
 
 
 8
 The verdicts finding that the registrars were not rehired for reasons of patronage are amply supported by the record. Nevertheless, the appellants contend that Branti does not protect a public employee who is not reappointed at the expiration of an employment term.[3] They note that no decision in this circuit has applied Branti to a failure to rehire. The appellants alternatively contend that the Virginia statutory scheme governing election officials provides a justification for their actions that satisfies the Branti standard.
 
 
 9
 We thus face two questions: first, does the Branti prohibition on patronage dismissals govern a failure to reappoint? And second, if so, have the appellants demonstrated sufficient justification for their decisions not to reappoint the registrars?
 
 
 10
 We rely on the language of Branti and the weight of post-Branti authority in deciding that Branti indeed governs patronage refusals to rehire as well as patronage discharges. Certainly, the appellees had no contractual right or contractually-based expectation of reemployment. It does not follow, however, that the refusal to reemploy them did not violate their constitutional rights. The Supreme Court has consistently recognized that "even though a person has no 'right' to a valuable governmental benefit ... [government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Perry reaffirmed prior Supreme Court decisions holding that nonrenewal of a nontenured public school teacher's contract cannot be based on the teacher's exercise of first amendment rights. 408 U.S. at 596-98, 92 S.Ct. at 2697-98. See, e.q., Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).
 
 
 11
 Branti cited Perry, Keyishian, and Shelton in delineating its standard for politically motivated discharges. Branti, 445 U.S. at 514-16, 100 S.Ct. at 1292-93. Branti also strongly suggests in a footnote that one cannot draw any constitutional line between a failure to reappoint and a discharge. The employer in Branti urged the Court to treat the case as a failure to reappoint case rather than a dismissal, arguing that the employees' terms automatically expired along with the employing official's term and that the employees had no reasonable expectation of reemployment by an opposition party. The Court rejected this distinction, noting that "it is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs." 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6.
 
 
 12
 Courts have treated failure to rehire as the equivalent of dismissal in applying Branti to patronage employment practices. See, e.g., Cheveras Pacheco v. Rivera Gonzalez, 809 F.2d 125, 127-28 (1st Cir.1987); Furlong v. Gudknecht, 808 F.2d 233, 237-38 (3d Cir.1986); McBee v. Jim Hogg County, 730 F.2d 1009, 1015 (5th Cir.1984); Cox v. Thompson, 635 F.Supp. 594, 597-98 (S.D.Ill.1986); Whited v. Fields, 581 F.Supp. 1444, 1457 (W.D.Va.1984); Soileau v. Zerangue, 553 F.Supp. 845, 848 (W.D.La.1982); Visser v. Magnarelli, 530 F.Supp. 1165, 1168 (N.D.N.Y. 1982); Brady v. Paterson, 515 F.Supp. 695, 698-99 (N.D.N.Y. 1981). We too conclude that there is no constitutional difference between a patronage refusal to rehire and a patronage dismissal. The district court correctly applied Branti to the appellants' refusal to rehire the appellees.
 
 
 13
 Nevertheless, a court must sustain a patronage refusal to rehire when the employer "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518, 100 S.Ct. at 1295. The appellants emphasize that the Virginia General Assembly created a statutory scheme requiring political patronage in the composition of electoral boards, which in turn fosters patronage in the appointment of registrars. The appellants argue that the General Assembly has thus determined that political party affiliation is an appropriate requirement for the effective job performance of a registrar or assistant registrar.
 
 
 14
 Although the Virginia statutes require certain political party affiliation for members of electoral boards, the statutes do not require that registrars be members of the majority political party. Furthermore, when asked whether political party affiliation would either enhance or detract from a registrar's job performance, the Secretary of the State Board of Elections answered in the negative. The Secretary also testified that she had no idea of the party affiliation of most of the registrars. The district court correctly found that party affiliation is unnecessary to perform a registrar's ministerial duties effectively. While the Virginia statutory scheme may facilitate political patronage in the appointment of registrars, this alone does not satisfy the Branti standard. Party affiliation must be more than a matter of convenience; it must be an appropriate requirement for the position. Because the appellants have not demonstrated any such requirement, we affirm the judgment of the district court that the failure to rehire the appellees violated their first and fourteenth amendment rights.
 
 III
 
 15
 The Supreme Court held in Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), that public officials who violate the constitutional rights of others enjoy qualified immunity from liability for damages when their conduct satisfies the standard of "objective reasonableness":
 
 
 16
 [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
 
 
 17
 ... [T]he judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.
 
 
 18
 Clearly Harlow and its progeny do not require public officials to anticipate the extension of legal principles or the clarification of constitutional rights. Mitchell v. Forsyth, 472 U.S. 511, 534-35, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985). Equally clearly, however, public officers should not automatically receive qualified immunity simply because there is not a strict factual nexus between their actions and the precedent establishing the right allegedly violated. 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 n. 12. Public officials must consider the possible relevance of legal principles established in analogous factual contexts. However, in cases where there is a legitimate question whether those principles extend to the particular case before the court or whether the particular case might constitute an exception to those principles, the court should sustain a qualified immunity defense.
 
 
 19
 In rejecting the appellants' qualified immunity defense, the district court held that the appellees' constitutional rights "were clearly established and had been for several years." Kilgore, 637 F.Supp. at 1247. Certainly a reasonable public official should have known that Branti established a rule protecting public employees from discharge solely for patronage reasons unless party affiliation is a relevant job requirement. The question we must resolve is whether the appellants' actions came under any arguable or established exception to Branti.
 
 
 20
 The appellants contend that an open question existed whether their actions fell within an exception to Branti based on the "small office" concerns noted as dictum in Ramey v. Harber, 589 F.2d 753, 756-57 (4th Cir.1978):
 
 
 21
 [W]e take notice of the intimate relationship that undoubtedly exists between the sheriff and his deputies in a small county like Lee County, Virginia. The efficient operation of the sheriff's office in Lee County requires a high degree of mutual cooperation, confidence and support. None of these elements is likely to be present where the parties are bitter political antagonists. By contrast, the relationship between the sheriff and his deputies in the large Cook County, Illinois office [the office involved in Elrod] is likely to be far more impersonal.... While [the deputies'] lack of party support could create some antipathy between them and the newly elected Democratic sheriff of Cook County, the existence of such antagonism is far from inevitable.
 
 
 22
 Ramey noted that these factual distinctions between large and small office situations "raise[d] a question as to the applicability of Elrod." 589 F.2d at 757. Concurring, Judge Hall emphasized that the small size of the office was one of the factors that made Elrod inapplicable. 589 F.2d at 761.
 
 
 23
 The acts of the appellants occurred during 1983. Roughly contemporaneous with these acts, other courts embraced the rationale of the Ramey dictum and recognized a small office exception to Elrod/Branti. See McBee v. Jim Hogg County, 703 F.2d 834, 841-42 (5th Cir.1983); Horton v. Taylor, 585 F.Supp. 224, 227-28 (W.D.Ark.1984); Dove v. Fletcher, 574 F.Supp. 600, 604-05 (W.D.La.1983). Though the small office exception recognized in these cases has subsequently been called into doubt, and notwithstanding that this circuit never formally adopted such an exception, these cases indicate that there was indeed a legitimate question at the time the appellants acted whether there existed a "small office" exception to Branti.[4] A reasonable public official in the appellants' position could have concluded that the appellants' acts would not violate the appellees' constitutional rights. Therefore, the appellants are entitled to qualified immunity against damages in their individual capacities.
 
 IV
 
 24
 The district court also assessed damages against the appellants in their official capacities. Whether this judgment may be sustained depends on the appellants' status as state or local employees. Virginia and its insurance carrier argue that general registrars and electoral board members are local employees for whose actions the state is not responsible. The counties and their carriers protest that the appellants are state--not local--employees.
 
 
 25
 In looking to the applicable Virginia statutes, we find no dispositive statements concerning the status of these officials.[5] Thus, we turn for guidance to Virginia decisional law and the general statutory scheme governing registrars and electoral boards.
 
 
 26
 No Virginia case has conclusively determined the status of these election officials. Indeed, the cases do not provide any hard and fast rules for determining the status of public employees in general. As the state Attorney General noted in an opinion arising out of these proceedings:
 
 
 27
 There is no firm rule expressed in the cases by which one may, with confidence, determine in every situation that a particular public officer or employee is a State or local government official, and, in fact, each such determination tends to be controlled by the context in which the question is presented.
 
 
 28
 1982-83 Report of the Attorney General, at 225. Virginia courts have even held such typically "local" officials as city council members and police to be state rather than local officials, depending on the context in which the issue arises. Lambert v. Barrett, 115 Va. 136, 140-43, 78 S.E. 586, 587-88 (1913) (city council member); Burch v. Hardwicke, 71 Va. (30 Gratt.) 24, 35-36 (1878) (police chief).
 
 
 29
 The Burch case provides general guidance for distinguishing state and local officers in Virginia. Burch addressed the question whether the mayor of Lynchburg could discharge the chief of police who, pursuant to the city charter, was appointed and subject to removal by the police commission. Noting that the mayor had constitutional authority to remove a city official, but not a state official, the court turned its attention to determining the status of the police chief:
 
 
 30
 Who, then, are the "city officers," in the true and literal sense of the term? It is not easy to define them in all cases; but there are many such provided for in the charter of the city of Lynchburg, and in the charters of other cities. Among these are, perhaps, city engineers and surveyors, officers having superintendence and control of streets, parks, waterworks, gas-works, hospitals, sewers, cemeteries, city inspectors, and no doubt many others well known in large cities. Their duties and functions relate exclusively to the local affairs of the city, and the city alone is interested in their conduct and administration.
 
 
 31
 On the other hand, there are many officers, such as city judge, sergeant, clerk, commonwealth's attorney, treasurer, sheriff, high constable, and the like, some of whom are recognized by the constitution, while others are not. All these are generally mentioned as city officers, and they are even so designated in the constitution; but no one has ever contended that either of them is in any manner subject to the control and removal of the mayor. The reason is, that while they are elected or appointed for the city, and while their jurisdiction is confined to the local limits, their duties and functions, in a measure, concern the whole state. They are state agencies or instrumentalities operating to some extent through the medium of city charters in the preservation of the public peace and good government. However elected or appointed, however paid, they are as much state officers as constables, justices of the peace and commonwealth's attorneys, whose jurisdiction is confined to particular counties.
 
 
 32
 71 Va. at 33-34. The court held that the chief of police was a state official whom the mayor could not remove. 71 Va. at 35-36, 41. The Virginia court subsequently cited Burch in City of Alexandria v. McClary, 167 Va. 199, 203, 188 S.E. 158, 160 (1936), in finding that a police officer was a state official. More recently, in Messina v. Burden, 228 Va. 301, 321 S.E.2d 657 (1984), the court observed that "[a] state employee has a closer nexus to the sovereign." 228 Va. at 312, 321 S.E.2d at 663. This sentence neatly summarizes the extended discussion in Burch and reflects that when Virginia courts must classify an officer as state or local, they will determine whether the policies, responsibilities, and concerns of the officer bear a closer nexus to the state than to a local governmental entity.
 
 
 33
 Review of the relevant Virginia statutes discloses that electoral boards and registrars bear a closer nexus with the state than with the localities where they work. Electoral board members are appointed by state judges. The party affiliation of board members depends upon the party affiliation of the governor, not the party in power locally. They must take the oath of office prescribed for officers appointed pursuant to the state constitution. Va.Code Ann. Sec. 24.1-29 (1985). Their compensation is set by the state's general appropriations act, and their salaries and mileage expenses are reimbursed from the state treasury. Sec. 24.1-31. They may be removed in proceedings initiated only by the State Board of Elections, not by local government officials. Sec. 24.1-19. Their work is supervised and coordinated under the statutory authority of the State Board of Elections. The electoral boards do not have free rein in the appointment of general registrars. State law prescribes the number, terms, and duties of general registrars. Secs. 24.1-43; 24.1-44; 24.1-46. Electoral boards must maintain uniform statewide practices and proceedings. Sec. 24.1-19. The State Board of Elections has the power to promulgate regulations establishing and governing the duties of the electoral boards with respect to the state's central registration roster system, and electoral boards are bound by statute to follow such regulations to the exclusion of past practices. Sec. 24.1-27. In short, local governing bodies have no measurable control over the appointment, discharge, compensation, duties, or policies of the electoral boards. These are matters of state concern entrusted to state agencies. Accordingly, we hold that the electoral board members were acting as state employees when they failed to rehire Kilgore and McConnell as general registrars.
 
 
 34
 Similarly, the position of registrar also bears a closer relationship to the state than to any locality. The duties of the general registrar are established by the General Assembly and set forth at length in Va.Code Ann. Sec. 24.1-46 (1985). These duties are ministerial in nature, and local governing bodies have no authority or discretion to modify them. The qualifications for the registrar are determined by state statute. Like electoral board members, registrars' salaries are set by the General Assembly and reimbursed from the state treasury. Registrars must take the oath prescribed for officers appointed pursuant to the state constitution. The state sets their normal days of service. They may be removed only by the State Board of Elections or their electoral board, not by any local governing body or official. Secs. 24.1-43, 24.1-19, 24.1-34. The forms, procedures, and policies of the registrars are all determined by the state. We conclude that Cheek was acting as a state officer when he failed to rehire Burchett as assistant registrar.
 
 
 35
 The traditional principles of employer-employee law discussed by the district judge reinforce our conclusions. At common law, courts determined whether an employer-employee relationship existed by reference to four elements: (1) selection and engagement of the employee, (2) payment of wages, (3) power of dismissal, and (4) the power of control over the employee's actions. Tidewater Stevedoring Corp. v. McCormick, 189 Va. 158, 166, 52 S.E.2d 61, 65, (1949). Of these factors, the power of control is most crucial, and it is the potential power of control, not the actual exercise of control, that is relevant. Virginia Employment Commission v. A.I.M. Corp., 225 Va. 338, 347, 302 S.E.2d 534, 539-40 (1983). Here, the state sets and controls the procedure for selecting and hiring electoral board members and registrars. The state pays their compensation via reimbursement from the state treasury. The power to dismiss and fill vacancies is vested in the state. Finally, and most importantly, the state alone has the power to control the action, duties, and policies of electoral boards and registrars. We agree with the district judge that "the inescapable conclusion is that electoral boards and general registrars are dominated by the state." Kilgore, 637 F.Supp. at 1259. Since the appellants were acting as state employees, we proceed to discuss whether the eleventh amendment permits awards of damages against them in their official capacities.
 
 V
 
 36
 As the Supreme Court noted in Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985):
 
 
 37
 Official-capacity suits ... "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. (citations omitted)
 
 
 38
 Graham makes clear that the appellants are not personally obligated to pay any official capacity judgment entered against them. The question arises, therefore, whether these official capacity judgments can be collected from the state which, as Graham indicates, is the real party in interest.
 
 
 39
 There are two methods by which a state's eleventh amendment immunity may be overcome, and neither method is applicable here. First, Congress may explicitly legislate to abrogate this immunity. As the district court correctly noted, Sec. 1983 does not abrogate eleventh amendment immunity. Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).[6] Second, the state may voluntarily waive its eleventh amendment immunity. However, as the Supreme Court noted in Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360-61, 39 L.Ed.2d 662 (1974), waiver cannot be easily inferred from state legislative action:
 
 
 40
 In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."
 
 
 41
 A review of the pertinent Virginia statutes reveals that the state has not waived its eleventh amendment immunity. Section 8.01-192, which generally governs recovery of claims against the state, waives sovereign immunity in actions brought in Virginia courts. But it does not express the clear legislative intent necessary to constitute a waiver of eleventh amendment immunity. Croatan Books, Inc. v. Virginia, 574 F.Supp. 880, 882-83 (E.D.Va.1983); Jacobs v. College of William & Mary, 495 F.Supp. 183, 190 (E.D.Va.1980), aff'd, 661 F.2d 922 (4th Cir.1981). The Virginia Tort Claims Act, Va.Code Ann. Sec. 8.01-195.1 et seq. (1984 & Supp.1987), while generally waiving sovereign immunity for tort claims filed in state courts, does not waive the state's eleventh amendment immunity. Reynolds v. Sheriff, City of Richmond, 574 F.Supp. 90, 91 (E.D.Va.1983).
 
 
 42
 Nor do the statutes governing the state's insurance plan waive the state's eleventh amendment immunity. In 1986, the Virginia General Assembly enacted Sec. 2.1-526.8(E) in order to extend insurance protection to registrars and electoral board members. However, the legislation creating the insurance plan states that "[a]lthough the provisions of this article are subject to those of [the Virginia Tort Claims Act], nothing in this article shall be deemed an additional expressed or implied waiver of the Commonwealth's sovereign immunity." Va.Code Ann. Sec. 2.1-526.11 (1987).
 
 
 43
 In short, we find no Virginia statutes which can be construed to express the clear legislative intent necessary to render the state liable in damages in federal court for the acts of these appellants. The district court correctly found that the eleventh amendment barred the collection of these judgments from the state. But it erred in awarding damages against the appellants in their official capacities, because such an award is tantamount to a judgment against the state contrary to the prohibitions of the eleventh amendment. See Graham, 473 U.S. at 165-68, 105 S.Ct. at 3105-07.
 
 VI
 
 44
 The district court held that the state's insurance carrier, Compass Insurance Company, was liable for the judgments entered in favor of the appellees. The policy named as an "insured" any person "duly constituted by or for the Commonwealth of Virginia as a State employee." It defined "State employee" as "any person acting in an official capacity." There can be no doubt that the appellants were named insureds under the policy.
 
 In the coverage clause Compass agreed
 
 45
 [t]o pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the Liability imposed upon him by law resulting from any claim made against the Insured arising out of the Insured's activities ... including, but not limited to, sums which the Insured shall become obligated to pay pursuant to 42 U.S.C. 1983 and 1988 and as a consequence of any court order issued thereunder.
 
 
 46
 The appellants, however, are not obligated to pay any sums. They are entitled to qualified immunity in their individual capacities. Graham establishes that they are not personally obligated to pay judgments entered against them in their official capacity. Consequently, the insurance does not afford coverage.
 
 VII
 
 47
 The appellants' actions in failing to rehire the appellees violated the appellees' rights guaranteed by the first and fourteenth amendments. The decision of the district court finding such a violation is accordingly affirmed. Since the state's eleventh amendment immunity does not protect it from suits for injunctive relief governing its officials' future conduct, the order of the district court requiring the appellants to rehire the appellees is also affirmed. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
 
 
 48
 Because the appellants are entitled to qualified immunity, and since neither the state nor Compass Insurance Company can properly be held liable in damages for acts of the appellants in their official capacities, the judgment of the district court awarding damages is reversed. We find no cause for reversal in the other assignments of error. Having substantially prevailed, the appellees shall recover their costs.
 
 
 49
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 The district court opinions are reported as Kilgore v. McClelland, 637 F.Supp. 1241 (W.D.Va.1985); Burchett v. Cheek, 637 F.Supp. 1249 (W.D.Va.1985); Kilgore v. McClelland, 637 F.Supp. 1253 (W.D.Va.1986)
 
 
 [2]
 Damages in all cases were based on the aggregate salary of a registrar or assistant over a four-year period. The judgments, however, provided for reduction of the damages by future earnings resulting from reinstatement. McConnell and Burchett resumed their offices in 1986 and Kilgore in 1987
 
 
 [3]
 The appellants argue that the appellees' terms of employment had ended and that the appellees therefore had a duty to apply for continued employment. The appellants also argue that since Kilgore and McConnell did not formally reapply, their cases should be treated as failure to hire cases rather than failure to rehire cases. We need not, however, address the application of Branti to failure to hire cases, since the record indicates that the appellants in both Kilgore and McConnell had notice of the appellees' intent to continue serving as registrars. The district court properly treated these cases as failure to rehire cases
 
 
 [4]
 This circuit expressly rejected the notion of any "small office" exception in Jones v. Dodson, 727 F.2d 1329, 1338 and n. 14 (4th Cir.1984). Jones, however, was not decided until well after the appellants' acts
 Likewise, subsequent proceedings in McBee, Horton, and Dove either rejected or cast doubt upon the small office exception. McBee v. Jim Hogg County, 730 F.2d 1009 (5th Cir.1984) (en banc); Horton v. Taylor, 767 F.2d 471 (8th Cir.1985); Dove v. Fletcher, 744 F.2d 92 (5th Cir.1984). Like Jones, these cases were not decided until after the appellants' acts.
 
 
 [5]
 The former Va.Code Ann. Sec. 24.1-32 (1985) provided that registrars and electoral board members were local officials for the purposes of the Workers' Compensation Act but did not speak to their status for other purposes. The state argues that this case is governed by the 1986 amendment to Sec. 24.1-32, which reads in pertinent part:
 Members of electoral boards, officers of election, general registrars, and assistant registrars shall be deemed, for all purposes, except as otherwise specifically provided by state law and including rules and regulations of the State Board of Elections, to be employees of the respective cities or counties in which they serve.
 The state argues that this amendment constitutes a legislative interpretation of the prior statute and that accordingly we must find the appellants to be local employees.
 We interpret Sec. 24.1-32 to mean that election officials are local employees unless statutes or administrative regulations determine them to be state employees. That is, of course, the question we must resolve here. Further, we note that the amendment to Sec. 24.1-32 was not effective until July 1, 1986, long after the institution and trial of these actions. See Va.Code Ann. Sec. 1-12(A) (1987).
 
 
 [6]
 Because the appellees' claims are based on Sec. 1983, this case differs from Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), which allows back pay awards in actions brought under Title VII of the Civil Rights Act of 1964. Fitzpatrick explains that Congress, in passing Title VII for the purpose of enforcing the provisions of the fourteenth amendment, authorized "private suits against States or state officials which are constitutionally impermissible in other contexts." 427 U.S. at 456, 96 S.Ct. at 2671