878 F.2d 379
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Faye GULLEDGE, Administratrix of the estate of David
Gulledge, Jr., for the benefit of herself and
David Gulledge, Sr., Plaintiff-Appellant,
v.
Joe A. SMART, J. Elbert Pope, Sheriff, John Hunsucker,
Defendants-Appellees.
 No. 88-2610.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1989.
Decided June 19, 1989.
Rehearing and Rehearing In Banc Denied July 24, 1989.
 
 Ray P. McClain, George D. Jebaily, Jebaily & Glass on brief, for appellant.
 William Henry Davidson, II, Nauful & Ellis, P.A., Terry B. Millar, Robert R. Carpenter on brief, for appellees.
 Before SPROUSE and WILKINS, Circuit Judges, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Faye Gulledge (Appellant), administratrix for the estate of her son, David Gulledge, Jr. (Gulledge), appeals from the grant of summary judgment in her civil rights suit, 42 U.S.C.A. Sec. 1983 (West 1981), alleging that Joe A. Smart, J. Elbert Pope, and John Hunsucker inadequately supervised Richard Jackson and failed to protect Gulledge from him. We affirm.
 
 I.
 
 2
 In 1985 Richard Jackson was a Deputy Sheriff in York County, South Carolina. Smart was Jackson's immediate supervisor and friend. Pope and Hunsucker were the Sheriff and Acting Sheriff of York County at different times during the year.
 
 
 3
 During 1985 Jackson was experiencing marital problems with his wife Lynn, who, unknown to Jackson, was having an affair with Gulledge. Jackson discussed his marital problems with Smart on several occasions, but there was no indication that the problems were affecting Jackson's job performance.
 
 
 4
 On September 4, 1985, after learning of his wife's affair, Jackson shot and killed Gulledge while off duty. Earlier that morning Lynn had told Jackson about her affair with Gulledge and had asked for a divorce. After visiting an attorney, they proceeded to Gulledge's place of employment where Jackson and Gulledge scuffled. After the Jacksons left the scene of the scuffle, Jackson retrieved his patrol car from a garage while Lynn returned to their home. When Jackson arrived at the house, he dragged Lynn to his patrol car, locked her in the "escape-proof" back seat, and told her that he was going to kill Gulledge and then "shoot out [her] knees." Jackson then drove the patrol car back to Gulledge's workplace and killed Gulledge by shooting him ten times with his personal AR-15 semi-automatic assault rifle.
 
 
 5
 Appellant brought this action alleging that Defendants had failed to take adequate steps to disarm Jackson after Jackson told Smart about his marital problems. More generally, Appellant claimed the Sheriff's Department had failed to train supervisors to detect and disarm potentially unstable officers. Appellant also alleged that the Sheriff inadequately supervised his deputies by failing to inspect Jackson's patrol car frequently enough to know whether it contained the assault rifle, and by allowing the deputies to use patrol cars for personal errands.[1] Alternatively, Appellant alleged breach of a general duty to protect the public from violence at the hands of a deputy sheriff.
 
 
 6
 The district court granted Defendants' motion for summary judgment concluding that, notwithstanding the use of the patrol car to drive to Gulledge's place of employment, the killing was "entirely personal in nature" and was "unrelated to Jackson's law enforcement activities." The court held that Appellant had failed to raise a genuine issue of material fact as to any of her claims. In the alternative, the court found that Defendants had qualified immunity for their actions as to personal liability and that they were entitled to absolute immunity from suit in their official capacities under the eleventh amendment.
 
 II.
 
 7
 Defendants had no affirmative duty to protect Gulledge from an unknown risk of harm from Jackson acting in his personal capacity. DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. ----, ----, 103 L.Ed.2d 249, 258-60 (1989). Jackson's motive for killing Gulledge was personal, the weapon he used was personal, and he was not on duty when he killed Gulledge. The district court properly granted summary judgment to Defendants on Appellant's failure to protect claim.
 
 
 8
 Appellant likewise failed to raise a genuine issue of material fact that Defendants' training or supervision of Jackson was proximately related to Gulledge's death. Although Smart was aware that Jackson was having marital difficulties, these difficulties did not affect Jackson's job performance. As Jackson's job performance is unchallenged, any deficiencies in supervision or training which may have existed were not proximately related to Gulledge's death. See Spell v. McDaniel, 824 F.2d 1380, 1390-91 (4th Cir.1987), cert. denied, 98 L.Ed.2d 765 (1988).
 
 
 9
 The alternative holdings of the district court, that Defendants were entitled to absolute and qualified immunity, are also correct. In South Carolina a sheriff, and his deputies, are state actors. See Heath v. County of Aiken, 295 S.C. 416, 418-19 & nn. 1, 3, 368 S.E.2d 904, 905 & nn. 1, 3 (1988). A suit against them in federal court in their official capacities is therefore barred by the eleventh amendment. McConnell v. Adams, 829 F.2d 1319, 1328-29 (4th Cir.1987), cert. denied, 100 L.Ed.2d 195 (1988). Likewise, since Defendants had no constitutional duty to prevent Jackson from killing Gulledge, they could not have violated any clear constitutional rule which would remove their qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Furthermore, since nothing Defendants did or failed to do proximately contributed to Gulledge's death, liability against them could not be established in any case. See Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978).
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 The record shows that it was the policy of the department to allow all officers to use their patrol cars for personal business within the county. This practice increased visibility of police presence. Officers using their vehicles on personal business were required to carry their badges and service revolvers with them, and to respond to emergencies. Jackson's service revolver and badge were in his possession at the time he killed Gulledge