**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PEGGY S. MCCREREY,
Plaintiff-Appellant,

v.

RAY ALLEN, JR.; JACK KOTVAS, in his
individual capacity,
Defendants-Appellees,        No. 96-1880

and

COMMONWEALTH OF VIRGINIA,
Department of Professional and
Occupational Regulation,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-95-497-3)

Argued: March 6, 1997

Decided: July 8, 1997

Before RUSSELL, HALL, and NIEMEYER,
Circuit Judges.

_____

Affirmed by published opinion. Judge Hall wrote the opinion, in
which Judge Russell and Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Rodney Alan Smolla, Marshall-Wythe School of Law,
COLLEGE OF WILLIAM & MARY, Williamsburg, Virginia, for

Appellant. Guy Winston Horsley, Jr., Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Gerald T. Zerkin, Melanie A. Hopper, Barbara J. Hughes, GERALD T. ZERKIN & ASSOCIATES, Richmond, Virginia, for Appellant. James S. Gilmore, III, Attorney General of Virginia, Catherine C. Hammond, Deputy Attorney General, Neil A.G. McPhie, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

_____

**OPINION**

HALL, Circuit Judge:

In this civil rights action against her former supervisor and the person hired to fill her position at a state agency, Peggy S. McCrerey claimed that the decisions to fire and replace her were politically motivated and that her First Amendment rights were thereby violated. The district court granted summary judgment to the defendants, and we now affirm.

The Virginia Department of Professional and Occupational Regulation (DPOR) oversees eighteen regulatory boards, the members of which are appointed by the governor. DPOR sets regulatory policy, administers regulations, provides staff support for the various boards, and serves as a liaison between the boards and the governor. McCrerey had been DPOR's Administrator for Regulatory Programs for two and a half years when she was fired in July 1994 by Ray Allen, who had recently been appointed director of DPOR. A new position of Chief Deputy Director was then created and posted, but McCrerey was not one of the two people interviewed for the position. Instead, the job went to Jack Kotvas, who had been active in the campaign of the then recently elected Republican governor. McCrerey is not active in any political party.

McCrerey sued, claiming that her termination and Kotvas's hiring were politically motivated. In ruling on the defendants' motion for summary judgment, the district court assumed the claimed political

2

motive behind both of the job decisions. However, the court also found that political affiliation was an "appropriate requirement" for the jobs in question and, therefore, that the patronage employment decisions at issue were not unlawful under the Elrod-Branti doctrine.**1** McCrerey v. Allen, 925 F.Supp. 1123 (E.D. Va. 1996). McCrerey appealed.**2**

Notwithstanding Allen's and Kotvas's arguments, both below and on appeal, that the disputed personnel decisions were based on merit, we agree with the district court that it must be assumed for summary judgment purposes that McCrerey's lack of Republican Party affiliation was a significant factor in both employment decisions. See id. at 1135-36. In accordance with Branti, 445 U.S. at 518, the district court shifted its focus to whether the State had met its burden of demonstrating that political affiliation was an "appropriate requirement for the effective performance" of the positions at issue and decided that the burden had been met. 925 F.Supp. at 1136.

Except for some isolated statements in the "Statement of Facts" section of her opening brief, McCrerey has made no effort to explain why political affiliation might not be an "appropriate requirement" for either position, and she does not argue on appeal that the district court erred in finding that the two positions in question "involve[d] issues on which there is room for political disagreement on goals and their implementation." Id. Her only argument is that the State cannot on the one hand declare through its legislature that political considerations should not enter into personnel decisions about a given job, and then, on the other hand, violate that same law and be heard to argue that, as a matter of fact, political affiliation is indeed an "appropriate requirement" for that same job.

The district court considered the state law --"Although neither state policy nor state law defining a position as requiring--or not

_____

**1** **Elrod v. Burns**, 427 U.S. 347 (1976); Branti v. Finkel, 445 U.S.

507
(1980).

**2** The district court alternatively ruled that Allen and Kotvas were entitled to qualified immunity. In light of our decision to affirm on the <u>Elrod-Branti</u> basis of the district court's decision, we do not reach immunity issue.

3

requiring--partisan political affiliation controls the <u>Elrod-Branti</u> anal-
ysis, it is a factor to consider in assessing whether a position is within
the protective ambit of the doctrine" (925 F.Supp. at 1137 (citations
omitted)) -- but ruled that "the factors which the federal constitu-
tional analysis must take into account override the countervailing
influence of the state law and policy statements on which McCrerey
relies." <u>Id.</u> at 1139. However, McCrerey wants more than deference
or a presumption accorded the state anti-patronage law; she contends
that the agency's violation of state law in her case effectively pre-
cludes a judgment in the State's favor.

McCrerey explains that she does not mean to assert that "state law
is <u>legally</u> determinative, but that where state law unambiguously
renounces any relevant state interest, it leaves the State with an insur-
mountable <u>evidentiary</u> hurdle." Appellant's brief at 24 n.5 (emphasis
in original). This evidentiary slant was apparently not articulated as
such below, although the district court culled an analogous contention
from McCrerey's opposition to the summary judgment motion: "Al-
though not articulated in this form, the result sought by McCrerey
perhaps is that the defendants are estopped from claiming the protec-
tion of the <u>Elrod-Branti</u> doctrine because of the provision of state law
and the policies cited earlier . . . ." 925 F.Supp. at 1138 n. 8. However
the argument is characterized, its core is the same-- when the State
has specifically determined that political affiliation may <u>not</u> be con-
sidered with regard to a given job or class of jobs, then state law does
indeed effectively control the First Amendment issue.**3** We agree with
the district court that state law cannot control the analysis because
"the content and scope of federal constitutional rights are matters of
federal constitutional law." <u>Id.</u> at n. 7.

---

**3** "In making a patronage-based decision against McCrerey in open vio-
lation of Virginia law, the Defendant/Appellees forfeited whatever claim

to the <u>Elrod-Branti</u> exception they might otherwise have made" (appellant's brief at 20); "[The State] is <u>foreclosed</u> by its own binding state policies from meeting its evidentiary burden of demonstrating a compelling, countervailing state interest to offset McCrerey's First Amendment right" (appellant's brief at 22) (emphasis in original); "The State simply can not meet its burden to establish an interest that outweighs McCrerey's First Amendment rights when state law specifically renounces any such interest" (appellant's brief at 24).

The role of state law in the Elrod-Branti analysis has not been explained with a great degree of precision. Compare Stott v. Haworth, 916 F.2d 134, 142 (4th Cir. 1990) (noting that a state law making certain positions exempt from civil service protection"create[d] a presumption at law that discharge or demotion was proper" (citing Savage v. Gorski, 850 F.2d 64, 69 (2d Cir. 1988)), with Akers v. Caperton, 998 F.2d 220, 225 n.7 (4th Cir. 1993) (noting, in a case involving a state statute that specifically provided that political affiliation was an important requirement for the position of highway superintendent, that "legislative findings are given deference"). State lawmakers, who are quite capable of enacting patronage-influenced employment statutes, cannot supplant the Elrod-Branti doctrine. We find no basis for establishing a per se or"absolute deference" rule when the disputed employment decision conflicts with the state's legislative determination. See Rouse v. Nielson, 851 F.Supp. 717, 723-24 (D.S.C. 1994) (rejecting argument that anti-patronage statute be given "absolute deference").

The district court correctly noted, and we now emphasize, that whether a patronage-based dismissal violates the First Amendment is ultimately a question of federal law. We reject McCrerey's invitation to establish a different rule where anti-patronage statutes are involved.

AFFIRMED

5